Jones, J.
We hold that the property interest of this absent debtor in its contract with a resident corporation was subject to levy by order of attachment and that jurisdiction of the New York courts quasi-in-rem may properly be predicated on that attachment.
ABKCO Industries (ABKCO) seeks repayment of a loan allegedly made to Apple Films, Ltd. (LTD), an English corporation. Unable to obtain personal jurisdiction over its English debtor, the creditor seeks by way of attachment to obtain jurisdiction quasi-in-rem in New York for the prosecution of its claim.
LTD entered into a licensing agreement (Licensing Agree *673 ment) with Apple Films, Inc., a New York corporation (INC), whereby LTD granted a general license to INC to promote a motion picture film owned by LTD, "Let It Be”, featuring the "Beatles”. Under the terms of this Licensing Agreement, INC agreed to pay to LTD 80% of the net profits received by INC from the promotion of the film. Exercising the authority granted it under the Licensing Agreement, INC contemporaneously entered into a distribution agreement (Distribution Agreement) with United Artists under which INC transferred its rights and control over distribution of the film to United Artists and United Artists agreed to pay INC 50% of the adjusted gross receipts from distribution of the film. The critical question is whether in these circumstances there was a debt or property of LTD in New York which could be attached by LTD’s creditor, ABKCO. The lower courts have held that LTD had an attachable interest, and we agree.
In our analysis the Distribution Agreement between INC and United Artists is irrelevant to our present inquiry, however significant it unquestionably is from an economic point of view. Our attention must be focused on the Licensing Agreement between LTD and INC, for it is that contract and the rights and obligations of the parties under it which must furnish the predicate for the attachment if any is to be found.
By virtue of CPLR 6202, an attachment under CPLR 6214 (subd [b]) is effective only if there is within the jurisdiction of our courts a debt or property of the debtor, here LTD, within the meanings of subdivisions (a) or (b) of CPLR 5201, which provide:
"(a) Debt against which a money judgment may be enforced. A money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or nonresident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state.
"(b) Property against which a money judgment may be enforced. A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment. A money judgment entered upon *674 a joint liability of two or more persons may be enforced against individual property of those persons summoned and joint property of such persons with any other persons against whom the judgment is entered.”
Here the issue turns on the proper analysis and classification of LTD’s rights under the Licensing Agreement with INC, the New York corporation.
Appellants argue that LTD’s right can only be classified as a debt within the meaning of CPLR 5201 (subd [a]). If this be the case, the argument continues, it is not an attachable debt because it is neither “past due” nor “to become due, certainly or upon demand”. At the time of the purported attachment nothing was past due. In consequence of INC’s having advanced expenses as to which INC was entitled to reimbursement from LTD and the fact that, since the film was still in the early stages of promotion, INC had not yet received any substantial sums from United Artists to which the 80% pay-over provision might apply, the net balance between LTD and INC was in INC’s favor; thus there was at the time no indebtedness owing from INC to LTD. Nor, appellants assert, can it be said that anything was to become due, certainly or upon demand, since it could not be known, or even reliably predicted, when if ever gross receipts from the film would reach the point of black balances in favor of LTD against INC. Thus, it is said, the alleged debt of INC to LTD was subject to such contingencies as to fall outside the scope of subdivision (a) under the decided cases.
We take a different view of the legal classification of LTD’s interests under the Licensing Agreement. We conclude that those interests constituted property, composed of the bundle of all its rights under the Agreement, of which, of course, the obligation of INC to pay under the 80% clause was the principal feature of economic significance. That property was attachable because concededly it was assignable by LTD (CPLR 5201, subd [b]).
Reflection on our holding in Glassman v Hyder (23 NY2d 354) is instructive. In that case it was sought to reach the interest of an absent debtor-landlord in a lease of real estate situate in the State of New Mexico. Analyzed from the perspective of property the interest of a landlord would not be classified simply as an interest in a contract; rather it would be an aspect of the leasehold. That approach, however, would have been unavailing since under recognized principles the *675 situs of a leasehold of real estate is at the location of the real estate. In Glassman the real estate was in New Mexico; thus the property of the landlord-debtor was beyond the reach of the New York courts. Resort then was had to the debt theory. On this approach the debtor-tenant could be reached in New York State, but as a debt the tenant’s obligation to pay future rents did not meet the statutory requirements for an attachable debt. The obligation to pay rent was not a debt and not certain to become due (Glassman v Hyder, supra, at p 359).
By contrast, the attachment here does not attempt to reach a debt or a property interest in a leasehold of real estate; rather it seeks to reach intangible personal property belonging to LTD—its interest in the Licensing Agreement. The situs of that intangible property is in New York where there is to be found the other party to the Licensing Agreement, INC, upon whom rests the obligation of performance. Tangible personal property obviously has a unique location and can only be attached where it is. It is true that some intangibles are deemed to have become embodied in formal paper writings, e.g., negotiable instruments, and in such instances attachment depends on the physical presence of the written instrument within the attaching jurisdiction (e.g., CPLR 5201, subd [c], par 4; 6202). No fact of physical location or concept of embodiment applies, however, to intangible property in an ordinary contract, written or oral; if in writing, that writing is only the evidentiary manifestation of the contract between the parties; it is not the contract itself. The CPLR contains no provision as to the situs of such property for attachment purposes, which we perceive to be the location of the party of whom performance is required by the terms of the contract. So here the intangible property of LTD, found in New York, may be attached.
Since we classify the subject of this attachment as property it is irrelevant that, had a balance been struck at the moment the attachment was effected, it would have disclosed that LTD was indebted to INC rather than that INC was indebted to LTD. We know of no threshold requirement that the attaching creditor show the value of the attached property or indeed that it has any value. Correlatively we know of no theory on which the debtor or the garnishee is entitled to a vacatur of the attachment if it can be established that the property in question is valueless. While the fact of value or lack of it has no legal effect on the validity of the attachment, it obviously *676 will have real economic significance. Even that aspect, however, may not come into sharp focus until execution on the judgment, if any, in the action for which the attachment provides jurisdiction.
Thus we conclude that the interest of LTD in the Licensing Agreement was property; it was assignable and hence attachable. Accordingly, the orders of the Appellate Division in these related cases should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
In each case: Order affirmed, with costs. Question certified answered in the affirmative.