**In re STN ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 84–00098.**

United States Bankruptcy Court, D. Vermont.

Dec. 11, 1984.

John W. Arpey, Saratoga Springs, N.Y., for Clark I. Fellers and Sylvia T. Fellers.

John R. Canney, III, Rutland, Vt., and Holly K. Nelson, West Pawlet, Vt., for debtor.

Jerome I. Meyers, Norwich, Vt., for Creditors' Committee.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The matter for determination by the Court is the Motion of Clark I. Fellers and Sylvia T. Fellers filed August 27, 1984 to reclaim possession from the Debtor of certain firearms. Both the Debtor and the Committee of Unsecured Creditors oppose this Motion.

## FACTS

The Debtor, STN Enterprises, Inc., was organized as a corporation on August 6, 1982 for the purpose of engaging in the purchase and sale of collectible firearms and related collectibles under the trade

name of "Atwater Arms." Stephen T. Noyes was its president, sole stockholder and the driving force behind the corporate business. The corporation also conducted an investment program which included the purchase of certain collections of antique firearms. Noyes died on May 5, 1984 as a result of injuries received in an automobile accident, and for several weeks prior thereto, the Debtor was having financial difficulties. These apparently precipitated the filing of a Petition for Relief on June 28, 1984 under Chapter 11 of the Bankruptcy Code. The Schedules show total liabilities of $12,-989,844.35 and assets of $5,284,415.05. Included in the assets are Bennington Firearms inventory and Greenwich Firearms inventory, listed at an estimated market value without forced sale of $2,500,000.00 and $1,500,000.00, respectively.

Clark I. Fellers residing in Rochester, New York, and retired from Eastman Kodak Company first became interested and involved with Atwater Arms early in 1981 when he began investing in the purchase of specific items of firearms and in the purchase of participating interests in various collections by the Debtor of miscellaneous high-grade firearms. He made these purchases and investments either individually or together with his wife, Sylvia T. Fellers.

From April, 1981, through January 28, 1984, Fellers and his wife had a total of 17 transactions with the Debtor. Their son, Gary T. Fellers, was a friend of Stephen T. Noyes and had a business association with Noyes. Gary T. Fellers also was knowledgeable in the business of antique firearms, and he held a license to possess them whereas his father, Clark I. Fellers, held no such license, although he had started applications for a license under which he could possess, own and hold hidden weapons.

Clark I. Fellers, although he had some expert knowledge of firearms, relied heavily upon his son in making investments and purchasing weapons from the Debtor. Among the transactions which Clark I. Fellers and his wife had with the Debtor and under which they seek to reclaim posses-sion from the Debtor of firearms, are the following:

A. On November 24, 1982, Fellers paid over to the Debtor the sum of $8,500.00 for the purchase of "1—Colt S.A.A. Revolver 7½", Full Royal Blue Finish 45 L.C. Cal., Ivory Stocks Gold Inlaid & Background Engraved by L. Francolini Serial # SA 03931." As evidence of this transaction, Fellers received a receipt from the Debtor to which was attached a copy of a letter dated March 23, 1982 from Colt Industries, Firearms Division, containing pertinent data relating to the Colt S.A.A. Revolver purchased by Fellers.

B. On April 13, 1983, Fellers paid to the Debtor the sum of $2,300.00 for the purchase of "1—Colt SAA Revolver Serial # 62309-SA" for which Fellers received from the Debtor a receipt to which was attached a copy of a letter dated April 14, 1980 from Colt Industries, Firearms Division, containing the historical information relating to the Colt SA Revolver.

C. On August 8, 1983, Fellers paid to the Debtor the sum of $30,000.00 for the purchase of "1—Colt Single Action Army Ser # 324523, 38 WCF, Nickle finish, custom engraved in the same pattern as the General Patten SAA. R to be held for sale in one year—projected return 38—55%" for which he received from the Debtor a receipt for this purchase. In addition, he received from the Debtor a "Buy-Back Agreement" executed on August 8, 1983 by Stephen T. Noyes before a notary public under which the Debtor agreed to buy back the Colt Single Action Revolver, Serial # 324523, for its original purchase price of $30,000.00 if Fellers and his wife decided to sell it at anytime prior to August 8, 1984, provided that they gave Atwater Arms 30 days' notice via certified mail. Further, in connection with this transaction, Clark and Sylvia Fellers received a letter signed by Gary T. Fellers on "Atwater Arms" stationery dated September 14, 1983 which recited in part the following:

"The gun will be vaulted in Greenwich Connecticut in 'The Vault'. It is however your property and you may gain

access to it at anytime via Atwater Arms. Your ownership is to be documented via UCC which will be forwarded to you via Atwater Arms attorney."

This letter of September 14, 1983 also recited that a receipt for the purchase was enclosed together with a letter from Colt Industries which in fact contained historical information relating to the Colt Single Action Army Revolver.

D. On December 28, 1983, Fellers paid the Debtor the sum of $5,000.00 for the purchase of a Colt SAA New Frontier Serial Number 4549 NF. As evidence of this purchase, the Debtor gave Fellers a receipt for the sum of $5,000.00 which provided that the projected return upon resale would be in excess of 30% one year. In addition, Noyes forwarded to Fellers on "Atwater Arms" stationery a letter dated January 11, 1983 in which Noyes stated that the letter was a preliminary receipt to support the purchase by Fellers of a specific firearm.

Prior to the purchase of the four weapons hereinabove described, Fellers had purchased other weapons from the Debtor as an investment under an arrangement whereby the weapons would be resold by the Debtor from which Fellers would receive a profit. However, Fellers was not too happy with the other purchases, and it was his goal to have sole possession of the four weapons he is seeking to reclaim and he wanted to retain these as part of a collection. He was especially impressed with the one Colt S.A.A. Revolver because it was engraved by L. Francolini, who was a noted engraver, and he had engraved only a limited number of weapons.

Fellers talked to Noyes about taking possession of the weapons through his son, Gary Fellers, and at that time Noyes suggested the preparation of a U.C.C. form to be executed and filed as a protection for the ownership of these weapons by Fellers. The U.C.C. form was not immediately received by Fellers and none was ever filed either in the office of the Town Clerk of Bennington, Vermont or the office of the Secretary of State in Montpelier, Vermont.

Wayne D. Wetzel, Jr., was employed as a consultant by the Debtor from October, 1983, up to the date of the death of Noyes on May 5, 1984. Prior to that time Wetzel had been engaged to a certain extent in the purchase and sale of firearms and had had 15 to 20 transactions with Atwater Arms starting in 1982. As a consultant he was primarily involved in reviewing an insurance program for the Debtor and in the planning of a brochure which was to be used in the promotion of the Debtor's business.

In January, 1984, Fellers and Atwater Arms entered into a written bailment agreement executed by Fellers on January 26, 1984, and by Wayne D. Wetzel, Jr., upon instructions by Noyes, on January 31, 1984, relative to the four weapons purchased by Fellers. This bailment agreement reads as follows:

"Having purchased the firearm(s) listed below from Atwater Arms and realizing that improper or excessive handling can effect condition and thereby greatly reduce the value of my purchase, I wish to create a bailment, leaving my purchase in the care and custody of Atwater Arms. It is my understanding that Atwater Arms will store this purchase either in its secured showroom in Bennington or in 'The Vault' in Greenwich, Connecticut. It is also understood that Atwater Arms has sufficient insurance on both locations and coverage while in transit. I agree to pay, on an annual basis, a reasonable fee for insurance and storage while my purchase is in Atwater Arms' care and custody.

"1975 Show Gun Colt SER 62309 SA

Colt SA—03931

Colt SA—Ser 324523

New Frontier Ser 4549 NF'"

This bailment agreement was forwarded to Fellers by a covering letter dated 1–25–84 reading as follows:

"Our insurance coverage is fully 'in force' and we have waited for over a week for the actual policy to arrive. As

soon as it does we will send you a copy of the 'Lead Page.'

"I have also included a copy of the Bailment which should be self explanatory. Our records appear to coincide and I hope the enclosed summary sheet is satisfactory.

"Hope to see you the second week of February in Rochester, N.Y.

"Best Regards,
Steve"

Fellers made demand for the possession of the guns from the Debtor at least once prior to the death of Noyes, but there was no compliance with this request by the Debtor.

The Debtor still has possession of the Colt S.A.A. Revolver Serial No. 62309–SA and of the Colt S.A.A. New Frontier Serial No. 4549 NF, and these are stored in the Greenwich, Connecticut Vault.

The Colt Single Action Army Serial No. 324523 which Fellers purchased for the sum of $30,000.00 was sold on May 3, 1984 to one Stanley Shapiro and there was no record in the FFL Registration Book maintained by the Debtor as to the Colt Revolver Serial No. SA—03931 and the Debtor does not have possession of this weapon.

Fellers knew at all times pertinent that the Debtor was in the business of buying and selling guns.

Clark I. Fellers and Sylvia T. Fellers did on August 27, 1984 file a claim in the sum of $167,800.00 which recites that $45,800.00 may be deducted if the reclamation proceeding is allowed.

## DISCUSSION

The issue in this case is whether Fellers is the owner of the four weapons which he seeks to reclaim and whether he is entitled to possession.

■ The nature of a creditor's property rights in bankruptcy is defined by state law, not federal law. *Butner v. United States*, 440 U.S. 48, 54; 99 S.Ct. 914, 917, 59 L.Ed.2d 136; *In Re Skelly Jr.* (U.S. District Court—D. Delaware—1984), 38 B.R. 1000, 1001. State law also defines the nature and extent of debtor's and, therefore, the estate's interest in property. *Butner v. U.S.*, supra; *In Re Abdallah* (Bankr.D.Mass.1984) 39 B.R. 384, 386; *In Re Ford* (Bankr.Md.1980) 3 B.R. 559, aff'd 638 F.2d 14 (4th Cir.1981).

Under the Uniform Commercial Code, as adopted in this state, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties. 9A V.S.A. § 2–401(1). In the instant case, it was the intention of the parties that title to each of the four weapons would pass from the Debtor to Fellers upon payment of the purchase price for each weapon. This was evidenced by a receipt delivered by the Debtor to Fellers with each purchase. Therefore, upon payment of the purchase price, there was compliance with the manner and conditions agreed upon by the parties and title to the weapons passed from the Debtor to Fellers.

Coincidentally with the purchase of each weapon, Fellers evinced an intention to keep these firearms for a collection rather than for a resale, and this continuing intention was made known by Fellers to the Debtor until it was recognized by the execution of a formal written bailment agreement in January, 1984. There appears to be a discrepancy in dates since the letter from Noyes to Fellers transmitting the bailment agreement is dated 1–25–84 whereas the date of execution by Wetzel in behalf of the Debtor is 1–31–84. Such a discrepancy, even though unexplained, does not affect the substance of the transaction.

■ It is clear that a "true bailment" was contemplated by the parties. A "bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. 8 AmJur2d 738 § 2.

■ The agreement executed in January, 1984, clearly comes within the parameters

of a "bailment." It specifically states that the parties wished to create a bailment, leaving the purchase of the firearms in the care and custody of Atwater Arms to be stored in its secured showroom in Bennington or in "The Vault" in Greenwich, Connecticut, for which Fellers agreed to pay on an annual basis a reasonable fee for insurance and storage while the purchases were in Atwater Arms' care and custody. The special purpose of the bailment was safekeeping, and the firearms were to be kept by the Debtor until reclaimed by Fellers. 8 AmJur2d 738 § 2.

■ Under bankruptcy law, absent state statutory enactment to the contrary, if property was in a debtor's hands as bailee or agent, the trustee (in this case the debtor by virtue of § 1107) holds it as such, and the bailor can recover the property or its proceeds. 4 Collier 15th Ed. 541-40 § 541.-08. See also *In Re Veon, Inc.*, (Bankr.W. D.Pa.1981) 12 B.R. 186, 188; *Matter of Wright-Dana Hardware Co.*, 211 F. 908 (2d Cir.1914); *In Re Keith*, 1 UCC Rep.Ser 347; *In Re Cox Cotton Company* (U.S.District Court E.D.Ark.1982) 24 B.R. 930, 935; *Devita Fruit Co. v. FCA Leasing Corp.*, 473 F.2d 585 (6th Cir.1973); *Allgeier v. Campisi*, 117 Ga.App. 105, 159 S.E.2d 458 [5 UCC Rep 93] (1968). See also 8 AmJur2d 831 § 98.

■ With the sale of the Colt Single Action Army Ser. # 324523 Revolver which was subject to the bailment contract by the Debtor to Shapiro, Fellers became entitled to the proceeds. However, this was subject to the proviso that such proceeds were segregated by the Debtor and Fellers is charged with the burden of establishing such segregation. *In Re Schulman Coin & Mint, Inc.* (Bankr.S.D.N.Y.1976) 2 B.C.D. 534, 536. See also *U.S. v. Randall* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971). Having failed to prove segregation of the funds received by the Debtor from the sale of the firearm. Fellers is relegated to the status of a creditor having a claim against the Debtor for conversion of the property. 8 AmJur2d 908 § 178. See also *Burnham v. Marshall* 56 Vt. 365;

*Buckmaster v. Mower* 21 Vt. 204. In effect, Fellers as to this firearm becomes an unsecured creditor in this bankruptcy proceeding. *In Re Schulman Coin & Mint, Inc.*, supra, at page 536. Likewise, Fellers is in the same situation as to the Colt Revolver Serial No. SA–0391 since the Debtor does not have possession of it and, therefore, is in no position to deliver possession of it to him.

■ The Debtor argues that the transactions involving the four firearms constituted investment contracts which may be rejected as executory by the Debtor. It further contends that the bills of sale, apparently referring to the receipts delivered by the Debtor to Fellers, may be construed as "security agreements" and, since there was no filing of financing statements to perfect the security interests granted under the so-called "security agreements," Fellers is not entitled to a return of the firearms from the Debtor, who, under § 544 of the Bankruptcy Code, became a hypothetical lien creditor as of the date of the filing of the Petition.

The Court does not agree with the position taken by the Debtor. The Code does not define an "executory contract." However, the Bankruptcy Courts generally accept the definition of such a contract enunciated by Professor V. Countryman, an authority on bankruptcy, in his article entitled "Executory Contracts in Bankruptcy," Part I, 57 Minn.L.Rev. 439 at 460 (1973). He stated that an executory contract is one "under which the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other." This definition was also adopted in the bankruptcy case of *In re Sun Ray Bakery, Inc.*, 5 B.R. 670.

In the instant case, the parties agreed upon the purchase and sale of the firearms and, as hereinabove indicated, title to them passed from the Debtor to Fellers upon payment of the purchase price by Fellers, all in accordance with 9A V.S.A. § 2–401(1).

The firearms then belonged to Fellers as a fait accompli.

The contract, therefore, was not executory in nature, nor did the Debtor list the transactions with Fellers in its Schedules as executory contracts. However, it now belatedly indicates that it intends to do so by amendment and then reject them as executory, so that this action will have the effect of converting Fellers from a bailor into an unsecured creditor as to all of the four firearms purchased. The Court is not convinced that such strategy on the part of the Debtor should be permitted.

The contention that the "bills of sale" were in fact security agreements is without merit. The transactions as they were actually entered into by the parties support the construction by the Court that they were "true bailments." As such, Fellers had no obligation to comply with § 2–401(3) of Title 9A V.S.A. (part of the U.C.C. as adopted in this state). This section presumes a sale transaction rather than a true bailment. It also relates to goods delivered by the owner to a party under contract *for sale* and has no application to a "true bailment."

In sum, Fellers is entitled to reclaim the Colt S.A.A. Revolver Serial No. 62309–SA and the Colt S.A.A. New Frontier Serial No. 4549 NF which are now in the possession of the Debtor and is entitled to assert his claim for the other two weapons as an unsecured creditor under his proof of claim filed August 27, 1984.

### ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED:

1. The Debtor shall deliver to Fellers within ten days from the date of this Order the Colt S.A.A. Revolver Serial No. 62309–SA and the Colt S.A.A. New Frontier Serial No. 4549 NF.

2. Fellers is an unsecured creditor for the value of the Colt Single Action Army Serial No. 324523 and of the Colt Revolver Serial No. SA 03931 and this will be given consideration as part of his claim in the sum of $167,800.00 filed August 27, 1984.

3. Upon delivery of the Colt S.A.A. Revolver Serial No. 62309–SA and of the Colt S.A.A. New Frontier Serial No. 4549 NF by the Debtor to Fellers, the claim filed by him shall be reduced by $7,300.00.