09-3908-cv
EM Ltd. v. The Republic of Argentina

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of August, two thousand ten.**

PRESENT:
>           BARRINGTON D. PARKER,
>           DEBRA ANN LIVINGSTON,
>           DENNY CHIN,
>                   *Circuit Judges*.

_____

EM Ltd.,

>           *Plaintiff-Appellee*,

>           v.                                        09-3908-cv, 09-3928-cv

The Republic of Argentina,

>           *Defendant-Appellant*,

Banco de la Nación Argentina,

>           *Interested-Non-Party-Appellant*.

_____

NML Capital, Ltd.,

>           *Plaintiff-Appellee*,

>           v.                                        09-3910-cv, 09-3934-cv

The Republic of Argentina,

         *Defendant-Appellant*,

Banco de la Nación Argentina,

         *Interested-Non-Party-Appellant.*

_____

NML Capital, Ltd.,

         *Plaintiff-Appellee*,

         v.                                  09-3926-cv, 09-3937-cv

The Republic of Argentina,

         *Defendant-Appellant*,

Banco de la Nación Argentina,

         *Interested-Non-Party-Appellant.*

_____

NML Capital, Ltd.,

         *Plaintiff-Appellee*,

         v.                                  09-3927-cv, 09-3931-cv

The Republic of Argentina,

         *Defendant-Appellant*,

Banco de la Nación Argentina,

         *Interested-Non-Party-Appellant.*

_____

NML Capital, Ltd.,

         *Plaintiff-Appellee*,

v.                                                      09-3929-cv, 09-3932-cv

The Republic of Argentina,

        *Defendant-Appellant*,

Banco de la Nación Argentina,

        *Interested-Non-Party-Appellant*.

_____

FOR APPELLANT:      CARMINE D. BOCCUZZI (JONATHAN I. BLACKMAN, CHRISTOPHER P. MOORE, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY

FOR INTERESTED-NON-PARTY-APPELLANT:     MARK S. SULLIVAN (LAURA M. LESTRADE, *on the brief*), Dorsey & Whitney LLP, New York, NY

FOR APPELLEE EM LTD.:    DAVID W. RIVKIN, JOHN B. MISSING, SUZANNE M. GROSSO, *on the brief*, Debevoise & Plimpton LLP, New York, NY

FOR APPELLEE NML CAPITAL, LTD.:    DENNIS H. HRANITZKY (ROBERT A. COHEN , DAVID M. BIGGE, *on the brief*), Dechert LLP, New York, NY

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Defendant-Appellant the Republic of Argentina ("Republic") and Interested-Non-Party-Appellant Banco de la Nación Argentina ("BNA") (together, "Appellants") appeal from an August 18, 2009 opinion and order of the United States District Court for the Southern District of New York (Griesa, *J.*) granting the motions of Plaintiffs-Appellees EM Ltd. and NML Capital, Ltd. ("Appellees") to confirm *ex parte* orders dated May 22, 2007 restraining and attaching certain assets of the Republic in a trust (the "BH Trust") administered by the U.S. Bank Trust National

Association ("U.S. Bank Trust") and denying BNA's motion to vacate these orders. We assume the parties' familiarity with the underlying facts, procedural history, and the issues on appeal. For the reasons that follow, we reject the Appellants' arguments and affirm the opinion and order of the district court.

## 1. *Availability of Assets for Attachment and Restraint*

As the district court explained—and as the parties do not challenge—a federal court employs the attachment and execution procedures provided by the law of the state in which the court sits. Fed. R. Civ. P. 69(a); *see Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 20 (2d Cir. 1999) (applying Federal Rule of Civil Procedure 69(a) and, hence, New York law, in an Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-11, action). In this case, therefore, the district court properly employed the procedures provided under New York law.

Some of the orders confirmed by the district court were pre-judgment attachments and some were post-judgment restraints; the requirements under New York law are similar for both. *See* N.Y. C.P.L.R. §§ 5201(b), 6202. At issue here is the requirement that, if the attachment or restraint is served on a person other than the defendant, that entity must, at the time of attachment be "in the possession or custody of property in which [such person] knows or has reason to believe" the defendant or judgment debtor has an interest. N.Y. C.P.L.R. §§ 5222(b), 6214(b). We review the district court's ruling on a request for order of attachment for abuse of discretion. *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009). "The district court abuses its discretion if it applies legal standards incorrectly, relies on clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." *Id.* We review *de novo* the district court's determination of Argentine law, *Norwind v. Rowland*, 584 F.3d 420, 429 (2d Cir.

4

2009), and choice of law decision, *Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir. 1998).

The district court determined that, after "weigh[ing] plaintiffs' offer of proof against the contrary evidence offered by BNA," *see Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006) (explaining that a "court presented with an application for an order of attachment must determine whether a statutory ground for attachment exists" by "weighing . . . [the] evidence"), the Public Funds, which have the right to receive distributions from the BH Trust, are "part of the Republic" and their rights to receive distributions from the BH Trust were therefore properly attached. The court also concluded that the corpus of the BH Trust was properly attached. Appellants have not pointed to anything in the record that leads us to conclude that the district court abused its discretion when it found that the evidence weighed in favor of Appellees here. For the reasons articulated by the district court, therefore, we agree that the record shows that the Republic, on numerous occasions, took action consistent with discretionary use of the Public Funds as part of the Republic itself and that the Funds were properly attached and restrained to satisfy the debts of the Republic.

We further affirm the district court's decision to confirm the orders attaching or restraining the assets in the BH Trust. Appellants' primary argument that attachment and restraint of these assets was in error is that the BH Trust is a valid trust under Argentine law and the assets in the trust belong to the trust itself, not to the Republic. "[T]he FSIA implicitly requires courts to apply the choice of law provisions of the forum state with respect to all issues governed by state substantive law." *Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 959 (2d Cir. 1991); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 85 (2d Cir. 2002) ("[I]n FSIA cases, we use the forum state's choice

5

of law rules to resolve *all* issues, except jurisdictional ones." (internal quotation marks omitted)).
Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Id.* If a conflict is identified, New York requires application of an "interests analysis" in which "the law of the jurisdiction having the greatest interest in the litigation [is] applied and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.* Finally, "New York law requires the court to honor the parties' choice [of law provision] insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated." *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987).

We therefore look to New York law to determine whether the BH Trust is a valid trust. Here, the record supports the conclusion that, despite the choice of law provision in the BH Trust agreement purporting to establish a trust pursuant to Argentine law, New York law would not recognize it as such since enforcing the trust agreement would violate "fundamental policies" of New York law. Both parties agree that, under Argentine law, the BH Trust is a valid trust that would be protected from the Republic's creditors. However, in New York, "[i]t is against public policy to permit the settlor-beneficiary to tie up her own property in such a way that she can still enjoy it but can prevent her creditors from reaching it." *Vanderbilt Credit Corp. v. Chase Manhattan Bank, NA*, 100 A.D.2d 544, 546, 473 N.Y.S.2d 242, 246 (2d Dep't 1984). For instance, "a judgment creditor may reach the corpus of the trust if the trust agreement grants the trustee the power to invade the corpus and pay the entire principal to the settlor." *In re Portnoy*, 201 B.R. 685, 698 (S.D.N.Y. 1996).

According to the trust agreement, the corpus of the BH Trust is to be sold and distributed by order of the BH Trust trustee. However, it is the Assistance Fund—through its Executive Committee, members of which are appointed by the federal government—that directs the trustee of the BH Trust when to sell American Depository Shares ("ADSs") so that the proceeds can be distributed to the Assistance Fund and then used to capitalize the Infrastructure Fund. As the district court determined, the Assistance Fund is actually part of the Republic. In effect, then, the assets that comprise the corpus of the BH Trust are controlled directly by the Republic. Because the Republic has the current authority to direct disposition of the corpus of the BH Trust for its own benefit, we believe that, for reasons of long-standing public policy, New York law would not recognize the BH Trust as a valid trust entitled to protection against creditors. Thus, it was not error for the district court to confirm the orders attaching and restraining the corpus of the BH Trust.

Appellants additionally argue, with regard to the Public Funds, that the district court erred in performing a choice of law analysis and determining that neither Argentine or New York law would consider them to be valid trusts. We need not opine on the choice of law question with regard to the Public Trusts because even under Appellants' suggested analysis pursuant to Argentine law, for the reasons articulated in the district court's opinion, which we have reviewed *de novo*, we agree with the district court that the Public Funds are not valid trusts protected from attachment and restraint.

Finally, we agree with the district court that the Public Funds are not protected by *First National City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611 (1983), in which the Supreme Court held that "duly created instrumentalities of a foreign state are to be accorded a presumption of independent status." *Id.* at 627. Whether an entity is an instrumentality or an agency of the foreign state is determined by considering "whether the core functions" of the

entity "are predominately governmental or commercial." *Garb v. Republic of Poland*, 440 F.3d 579, 594 (2d Cir. 2006) (internal quotation marks omited). If the entity at issue is an instrumentality of the foreign state, its property cannot be used to satisfy the judgments of that state. *See De Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984). The *Bancec* presumption can be overcome if, under the principles of corporate law, the separate juridical status of the instrumentality should be disregarded. *Id.* at 794; *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 477 (2d Cir. 2007).

Here, we need not decide whether the Funds are or are not entitled to the *Bancec* presumption as instrumentalities of the Republic since, even if they are, we would determine that the Funds are "so extensively controlled by [their] owner that a relationship of principal and agent is created" such that the presumption would be overcome. *See Bancec*, 462 U.S. at 629. The Assistance Fund is controlled by state appointees who make decisions about when to access the assets in the BH Trust in order to effectuate the goals of the Infrastructure Fund. And as previously discussed, the Republic has repeatedly treated the Funds as its own. This is sufficient for us to conclude that, even if the Funds are properly considered instrumentalities, any presumption of a separate juridical status has been overcome.

## 2. Foreign Sovereign Immunities Act

Pursuant to the FSIA, "property in the United States of a foreign state shall be immune from attachment arrest and execution," except as otherwise provided by exceptions set forth in 28 U.S.C. §§ 1610 and 1611. 28 U.S.C. § 1609. At issue here are sections 1610(a) and (d), which authorize pre- or post-judgment attachment of "property in the United States of a foreign state . . . used for a commercial activity in the United States." *Id.* § 1610(a), (d). "[T]he property that is subject to attachment and execution must be 'property in the United States of a foreign state' and must have been 'used for a commercial activity' at the time the writ of attachment or execution is

issued." *Aurelius Capital Partners, LP*, 584 F.3d at 130 (quoting 28 U.S.C. § 1610) (italics omitted). The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* The Supreme Court explained that a foreign state engages in commercial activity "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992); *see also De Letelier*, 748 F.2d at 797 (explaining the inquiry focuses on "whether the activity is of the type an individual would customarily carry on for profit").

Appellants contend that, contrary to the determination of the district court, the Public Funds' beneficial interests in the BH Trust are not located in the United States and, in any event, none of the attached or restrained property was being used for a commercial activity at the time of attachment. We disagree. As the district court—and Appellants—recognize, the situs of intangible property, such as beneficial interests, is "the location of the party of whom performance is required by the terms of the contract." *ABKCO Indus., Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675, 385 N.Y.S.2d 511, 513 (1976). There is ample evidence in the record to support the district court's determination that the property is located in New York, not Argentina. The BH Trust trust agreement specifies that the trustee of the BH Trust "shall dispose of any Option ADSs or Option Shares . . . remaining in the Trust Property pursuant to the instructions received by the Trustee from" the trustee of the Assistance Fund. Thus, in order to effectuate capitalization of the Public Funds, by the terms of the trust agreement, U.S Bank Trust is required to perform as ordered by the Assistance Fund. The record supports the conclusion that U.S. Bank Trust—the party of whom

9

performance is required—is located in New York. The Garnishee's Statement shows that the BH Trust is held in New York State by U.S. Bank Trust and the United States address of the BH Trust is on Wall Street, which the trust agreement designates as the address of the "principal corporate trust office." Thus, the Public Funds' beneficial interests in the BH Trust are located in New York and are thus "property in the United States" that were properly attached or restrained by the district court.

We further conclude that, at the time of attachment, the corpus of the BH Trust and the beneficial interests which the Public Funds hold in the BH Trust were being used for a commercial activity. At the time of attachment, the options on the ADSs in the BH Trust had expired and the ADSs themselves were the principal asset forming the corpus of the BH Trust. The purpose of the Public Funds, at the time of attachment, was to facilitate the sale of these ADSs at a time favorable to the Republic. The corpus of the BH Trust was therefore an investment of the Republic and the Public Funds' assets were, as the district court determined, being used to facilitate the investment and eventual sale of the securities. An investment of this sort is the kind of activity that a private player in the market would carry on for profit and is, therefore, a "commercial activity" under the FSIA.

We have considered the remainder of the Appellants' arguments and find them to be without merit.

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.


FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk